Jones, Judge:
These claims were filed before the Attorney General during the year 1965 for work performed and materials furnished in the renovation of the Conlon Bakery Building in Charleston, West Virginia for the purpose of providing offices for the Department of Welfare. A hearing of these claims was deferred pending the outcome of an action instituted in the Circuit Court of Kanawha County involving some of the same issues. The claimant, W. A. Abbitt Company, was the general contractor and the other claimants were subcontractors; and as the claim of W. A. Abbitt Company encompasses all of the claims of the subcontractors, the several claims were consolidated and heard together by this Court on November 29,1967.
The Conlon Bakery Building, together with its parking area and other incidental facilities, occupies an entire city block and contains approximately 35,165 square feet of floor space on two floors. By agreement dated June 16, 1964, it was leased by The Todd Company to the Department of Welfare for yearly terms totaling ten years at a rental of $78,088.25 per year, of which $6,000.00 was allocated to parking and $7,088.25 for the unimproved building at $2.05 per square foot of floor space. This *63 rental contemplated the installation of heating and air conditioning by the lessor, and the amortization of tenant alterations over a ten-year period.
Then the claimant W. A. Abbitt Company entered into two agreements, one with The Todd Company for the installation of heating and air conditioning, and the second with the Department of Welfare, evidenced by a letter of intent by the Department dated June 19, 1964. This letter authorized the claimant W. A. Abbitt Company to proceed with the work as outlined on the basis of cost plus ten per cent profit, payments to be on a monthly basis. A formal contract by and between the State of West Virginia, State Department of Welfare, and W. A. Abbitt Company was executed on July 31, 1964, being signed in the name of the State by W. Bernard Smith, Commissioner of the Department of Welfare, but the same was not approved as to form by the Attorney General. The contract set out an estimate of the cost of work to be performed in the amount of $25,000.00, but provided that “it is expressly understood, however, that neither the Department or the contractor guarantees the correctness of the estimate. Should any changes be made, after the contract has been signed, which increase the above estimate, it shall be modified in writing accordingly.” At that time the cost of work already performed was approximately $33,000.00 and the estimate was in the area of $60,000.00, but Robert E. Sheets, Vice-President of W. A. Abbitt Company was persuaded to sign the contract upon the assurance that the same was an open-end agreement which would be supplemented later. The contract was prepared by Robert Kaufman as attorney for the respondent, and previously had been signed and .acknowledged by Commissioner Smith who was out of town and would not return for two weeks. Sheets was also admonished that no payments could be made to the contractor until some kind of written contract had been executed. Efforts of the claimant W. A. Abbitt Company to obtain further assurances in writing were to no avail, but the respondent continuously importuned the diligent prosecution of the construction work.
All of the work was done on an emergency basis, due to the critical need of the Department of Welfare for office space. Department personnel were moved into the building shortly after work started and continued to move in as the work pro *64 gressed. As the need for space increased, the demands by the Department of Welfare upon the contractor for additional construction and renovation also increased. A project to accomo-date two divisions of the Welfare Department was expanded to meet the requirements of seven divisions. No architect was employed and no plans or specifications were furnished. All work was on a day to day basis under the direction and supervision of the Department of Welfare. Work commenced in June, 1964, and continued without interruption until November 2, 1964, when work was stopped. At this time, the renovation work had been largely completed, but all invoices submitted by the claimant W. A. Abbitt Company had been rejected by the Auditor on the grounds that the work had exceeded the contract price and that the contract had not been approved by the Attorney General.
In order to ascertain to what extent The Todd Company was responsible for the work done, mechanics liens were filed and in due course a suit to enforce said liens was instituted in the Circuit Court of Kanawha County. By order entered on December 7, 1967, said Circuit Court found The Todd Company liable to W. A. Abbitt Company and three of the subcontractors in the aggregate amount of $27,309.00, and enforced the mechanics liens to that extent; and said Circuit Court further found that the remaining claims of W. A. Abbitt Company and its eleven subcontractors “constitute a valid obligation of the West Virginia Department of Welfare owing to the respective parties and are not obligations of The Todd Company, defendant herein.”
Seven of said eleven subcontractors, being parties to the action, were awarded judgments against said W. A. Abbitt Company as follows: Asbestos and Insulating Company, $11,490.38; Worth Sturgeon, $11,344.86; Harris Brothers Roofing Company, $12,290.65; B&N Plumbing & Heating Company, $31,875.38; Floor Fashions, Inc. (Arrow Rug Co.), $7,925.61; Hunt Electric Company, $34,198.83; and Pearl Meeker, ad-ministratrix C.T.A. of the estate of Bernard O. Meeker, deceased, $7,458.60. The Circuit Court also listed the claims of the remaining four subcontractors who were not parties to the proceeding, as follows: E. E. Moore, $1,190.12; R. W. O’Dell, $2,062.14; Elbert A. Swain, dba Swain Window Cleaning Serv *65 ice, $2,196.00; and R. B. Wyatt & Sons, Inc., $2,575.00. Recoveries under the mechanics liens reduced the aggregate claim to $213,585.97. From the evidence adduced at the hearing, it appears that the amount of business and occupation tax included in the claim should be reduced in the sum of $1,074.62 to conform with the legislative reduction in the rate of tax after the claim was filed, thereby further reducing the total amount claimed to $212,511.35.
There were no defense witnesses, the respondent relying on the legal proposition that the parties failed to comply with West Virginia Code 5A-3-15, which provides:
“Contracts shall be signed by the commissioner in the name of the State. They shall be aproved as to form by the attorney general. A contract that requires more than six months for its fulfillment shall be filed with the State auditor.”
The respondent contends that (1) no valid contract was ever entered into between the parties; (2) that Commissioner Smith did not act within the scope of his authority; and that (3) the claimant was required to take notice of the extent of Commissioner Smith’s authority. In this case, Commissioner Smith did have authority to enter into a contract with the claimant, although his authority was not exercised in accordance with all legal requirements. Furthermore, the acts of a public officer improperly performed may be ratified and validated. 67 C.J.S., Officers, §§ 102 and 106. The facts of this case clearly establish ratification. The State has accepted the benefits of the work done and materials furnished, and has occupied and used the subject premises for approximately three and one-half years without any compensation to the claimant. About two hundred employees work in the offices constructed by the claimant. There is no dispute as to the amount of work done and materials furnished, the quality of materials or workmanship, or the amount of the aggregate claim. Based on comparable rentals in the City of Charleston, the respondent obtained an office building at a rental figure, $2.84 per square foot, which, taking into account the amortization of renovation costs, is shown to be fair and reasonable.
Under the facts of this case, the respondent’s defense is a purely technical one which we believe must give way to West *66 Virginia Code 14-2-13 which extends the jurisdiction of this Court to claims “which the State as a sovereign commonwealth should in equity and good conscience discharge and pay.” If this claim had arisen from a transaction between private individuals or corporations, it clearly would be an enforceable obligation.
After consideration of the record, the evidence and exhibits offered on behalf of the claimant, and the briefs and arguments submitted by counsel for both the claimant and respondent, the Court is of opinion that the claimant has proved a valid claim against the Department of Welfare which in equity and good conscience should be paid; and it is our judgment that the claimant W. A. Abbitt Company should recover, and an award is made to said claimant in the amount of $212,511.35.